UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

H. RICHARD FRUEHAUF, JR.,

        Plaintiff,

v.                                                                      Case Number 07-11767-BC
                                                                    Honorable Thomas L. Ludington

FRUEHAUF PRODUCTION COMPANY,
L.L.C.,

        Defendant.
_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR DISBURSEMENT OF FUNDS,
GRANTING DEFENDANT'S MOTION TO FILE SUR-REPLY BRIEF,
SETTING FOR HEARING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER
AND DEFENDANT'S MOTION TO EXTEND CASE MANAGEMENT ORDER,
SUSPENDING DISCOVERY DEADLINES IN CASE MANAGEMENT ORDER,
AND STAYING DISCOVERY**

This protracted dispute involves a father and a son, Plaintiff Dick Fruehauf and Rick Fruehauf. Rick Fruehauf owns Defendant Freuhauf Production Company, L.L.C. At issue before the Court are Plaintiff's request in his complaint to confirm an arbitration award under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, and Defendant's opposition to Plaintiff's instant motion for the disbursement of funds to be distributed in accordance with that arbitration award and presently held in an escrow account. On February 8, 2008, the Court held a hearing on Plaintiff's motion for disbursement of funds. At that hearing, the Court granted Defendant's motion to file a sur-reply brief, and the Court also permitted the parties to file supplemental briefing on issues raised at the hearing.

Relying on the interim and final arbitration awards attached to Plaintiff's first amended complaint, father and son previously had formed a partnership with General Electric Capital

Corporation (GE). That partnership apparently failed and occasioned its own prior litigation in Delaware, which culminated in a $5 million settlement to Defendant on or around November 12, 2004. The instant dispute involves father's and son's respective claims to the proceeds from the Delaware litigation.

On November 24, 2004, Plaintiff initiated litigation against Defendant before Chief Judge Friedman, seeking the creation of a constructive trust and requesting injunctive relief and a declaratory judgment. There, Plaintiff alleged that he was formerly a 30% member of Defendant, with his son owning the remaining 70% of Defendant. Pursuant to a separation agreement of January 1, 2003, Plaintiff stated that he had relinquished his ownership of Defendant. He maintained, however, that the settlement agreement also preserved for him in trust his 30% interest in the Delaware litigation, which was still ongoing when father and son executed the settlement agreement.[1] He claimed that, when the Delaware litigation settled, Defendant denied that he had any interest in those proceeds and refused to distribute them to him.

On November 29, 2004, in the proceedings before Chief Judge Friedman, the parties stipulated to deposit 30% of the settlement proceeds (to be not less than $1.5 million) in an escrow

---

[1] In relevant part, regarding that then-ongoing litigation, the settlement agreement provided:

> . . . [Plaintiff] understands that the point at which the benchmarks are reached is currently in dispute between [Defendant] and [GE] and [Plaintiff] agrees that [Defendant] shall have full right and authority to negotiate all matters pertaining to the [failed partnership's] agreements.
>
> In the event that an assignment of a portion of such [proceeds] to [Plaintiff] cannot be accomplished for legal reasons, [Defendant] shall hold such [proceeds] in trust for [Plaintiff] such that he is able to realize the full benefit and obligation of [Plaintiff's] share of such [proceeds].

*Separation Agreement*, ¶ 8, as excerpted in *Interim Arbitration Award*, Pl. 1st Am. Cplt., Ex. A [dkt #10-2].

account in Oklahoma. Those proceeds were "to be disbursed by the [e]scrow [a]gent only upon written authorization executed by counsel for both [P]laintiff and [D]efendant in this action, or pursuant to a final [a]rbitration [a]ward issued by the American Arbitration Association in arbitration proceedings to be instituted between [P]laintiff and [D]efendant. *Stipulation in 04-74625, Fruehauf v. Fruehauf Production Co. L.L.C. of November 29, 2004*, ¶ 1. That same date, the Court issued an order employing the same language for the disposition of the proceeds. The Court's order did not retain the second paragraph of the parties' stipulation, which provided that the action would be dismissed with prejudice "[u]pon receipt of the [e]scrowed [p]roceeds by the [e]scrow [a]gent, and the agreement of the [e]scrow [a]gent to be bound by the terms of this stipulation concerning disbursement of the [e]scrowed [p]roceeds . . . ." *Id*. at ¶ 2. On April 19, 2006, the parties voluntarily dismissed those proceedings.

On July 7, 2006, the arbitrators issued an interim award. Without elaboration, the arbitrators awarded Plaintiff $375,000, plus 25% interest, if any, that accrued while the funds were in the escrow account.

On April 23, 2007, Plaintiff initiated these proceedings. On August 8, 2007, Defendant answered and asserted affirmative defenses, including whether Plaintiff secured the arbitration award by fraud, undue means, or corruption.

On July 30, 2007, the arbitrators issued a final award. There, they considered a counterclaim proffered by Defendant and related parties, i.e., that Plaintiff had violated another term of the separation agreement. That term, allegedly, barred Plaintiff from retaining a particular attorney who had previously represented father, son, and their affiliated entities. The arbitrators concluded that, while Plaintiff had breached the separation agreement by again retaining that attorney, there was no

demonstration that that attorney's efforts affected the arbitration proceedings. Accordingly, the arbitrators issued a final award consistent with the interim award and requring the parties to share the fees and expenses of the arbitration proceedings equally.

On September 5, 2007, Plaintiff filed his first amended complaint to confirm both of the arbitration awards under 9 U.S.C. § 9. On October 3, 2007, Defendant filed an answer and asserted defenses, including that the arbitration awards were procured by corruption, fraud, or undue means.

On December 28, 2007, Plaintiff filed a motion for distribution of the funds from the escrow account, relying exclusively on the terms of Judge Friedman's order of November 29, 2004. Defendant opposes the motion, contending that its defense of undue means and fraud remains for adjudication. Defendant asserts that Plaintiff seeks to avoid its obligation to confirm the arbitration awards through this motion; indeed, Defendant contends that Plaintiff initiated the instant suit to do precisely that. Specifically, Defendant questions whether Plaintiff can avoid the requirements of the FAA simply by referring to the Court's earlier order. Defendant maintains that Plaintiff put forward false testimony before the arbitrators and failed to produce important documents in discovery.

Although not precisely apparent from the parties' filings, the central issues at this juncture in the proceedings are the following: (1) Plaintiff's contention that the 2004 order providing for deposit of funds in an escrow account operates to prevent Defendant from raising defenses available under the FAA; (2) Plaintiff's contention that Defendant did not timely raise its defenses under the FAA; and (3) whether Defendant can adduce facts in support of the defenses of fraud, undue means, and corruption.

The order of the Court in 2004 does provide for disbursement of the funds in escrow upon the issuance of a final arbitration award. Nothing in that order, however, provides for a waiver of defenses available to Defendant under the FAA. Indeed, Defendant has invoked defenses available to it under 9 U.S.C. § 10(a)(1), i.e., fraud, undue means, and corruption. Further, Plaintiff himself filed suit to confirm the arbitration awards, consistent with 9 U.S.C. § 9. Seeking to avoid the application of part of the FAA while seeking its benefit via this litigation is analytically untenable. Accordingly, the Court concludes that the 2004 order does not operate to bar or waive Defendant's defenses under the FAA.

Next, Defendant has timely asserted its defenses. Under 9 U.S.C. § 12, Defendant had three months from the filing or delivery of an arbitration award to request that any award be vacated, modified or corrected. The "uniform holding of courts" is that "objections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired."[2] *Occidental Chemical Corp. v. Int'l Chemical Workers Union*, 853 F.2d 1310, 1317 (6th Cir. 1988) (citations omitted). In *Island Creek Coal Sales Co. v. City of Gainesville, Florida*, 729 F.2d 1046 (6th Cir. 1984), the court concluded that confirming an interim award that involved a discrete issue did not violate the FAA's requirement that confirmation occur only on final and definite awards.

Defendant, however, would expand this holding to assert that interim awards equate with final awards and, so, argues that Plaintiff did not timely seek to vacate or modify the interim award. By its terms, the interim award provides for payment of an amount determined as of the date of the

---

[2] The court in *Southeastern Michigan Chapter, Nat'l Electrical Contractor's Ass'n v. Superior Acquisition, Inc.*, 2008 U.S. Dist. LEXIS 3893 (E.D. Mich. 2008), merely applied this general principle to conclude that the defendant there did not timely challenge the arbitration award.

entry of the final award and for entry of a final award, if Defendant did not pursue its counterclaim. Defendant did pursue its counterclaim, so the final arbitration award confirms and incorporates the interim award. The arbitration awards, on their face, show that the interim award was not final. Also, Defendant insists that his counterclaim was entwined with the interim award, because his counterclaim, in part, requested the elimination of the interim award. Consequently, Plaintiff's contention that the interim award was also a final award in unavailing.

The final arbitration award issued on July 30, 2007. On August 8, 2007, Defendant answered Plaintiff's complaint, including an affirmative defense of undue means, fraud, or corruption. Similarly, Defendant timely asserted the same defense on October 3, 2007, after Plaintiff filed an amended complaint adverting to both the interim and final arbitration awards. Thus, Defendant challenged the arbitration awards on a defense afforded under the FAA within the three month limitation period.

Finally, while Defendant may assert affirmative defenses, the Court will note that, notwithstanding defense counsel's eminent career, Defendant will eventually need to provide factual allegations to support its challenge, which may require discovery. The scope of discovery is within the broad discretion of the trial court. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1988); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) (permitting a court to limit the frequency or extent of use of discovery if "the burden or expense of the proposed discovery outweighs its likely benefit"). Importantly, in a case to confirm an arbitration award, "the review is very narrow; [indeed, it employs] one of the narrowest standards of judicial review in all of American jurisprudence." *Lattimer-Stevens Co. v. United Steelworkers of America*, 913 F.2d 1166, 1169 (6th Cir. 1990).

In light of the narrow review permissible, the court should correspondingly consider the extent to which discovery is warranted. The mere recitation of a ground available under 9 U.S.C. § 10 lacks the specificity and adequacy to substantiate the defense. At present, despite the opportunity to articulate a factual basis for asserting its affirmative defense, Defendant has yet to clarify what, if any, additional discovery it requires. It may be that the transcripts from the arbitration hearings could suffice to support its defense. Subsequent to the filing of Plaintiff's motion for the disbursement of funds, each party filed a motion pertaining to discovery. Plaintiff filed a motion for a protective order to avoid his own deposition, and Defendant filed a motion for an extension of the dates in the case management and scheduling order. In light of these pending motions and the Court's concern that additional discovery may not be warranted, the discovery deadlines in the case management and scheduling order will be suspended, staying discovery until further order of the Court. The parties' discovery motions will be set for hearing.

Accordingly, it is **ORDERED** that Plaintiff's motion for disbursement of funds [dkt #17] is **DENIED**.

It is further **ORDERED** that Defendant's motion for leave to file a sur-reply brief to Plaintiff's motion for disbursement of funds [dkt #23] was **GRANTED** on the record. Defendant shall file its sur-reply brief on or before **March 5, 2008**.

It is further **ORDERED** that Plaintiff's motion for a protective order [dkt #22] and Defendant's motion to extend the case management and scheduling order [dkt #24] are **SET FOR HEARING** on **April 15, 2008** at 2:00 p.m.

It is further **ORDERED** that the discovery deadlines in the case management and scheduling order are **SUSPENDED** and that discovery is **STAYED** until further order of the Court.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: February 26, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2008.

s/Tracy A. Jacobs  
TRACY A. JACOBS